No. 17,004.

LAYCOCK v. THE STATE.

CRIMINAL LAW.—*Motion to Quash Indictment.—Exception.—Record.— Supreme Court Practice.*—Before a question is presented to the appellate tribunal as to a ruling on a motion to quash an indictment, it must appear from the record that an exception was duly saved to such ruling.

SAME.—*Embezzlement.—Indictment, Sufficiency of.—Motion in Arrest of Judgment.*—Where an indictment for embezzlement was of the following tenor: "The grand jurors for the county of Marion, and State of Indiana, upon their oaths, present that James H. Laycock, on the first day of December, A. D. 1892, in the county of Marion, and State of Indiana, being then and there the officer, agent, clerk, servant and employe of Hoosier Lodge, No. 261, Brotherhood of Railroad Trainmen, and having then and there, as such officer, agent, clerk, servant and employe, the control and possession of two hundred and eighty-nine dollars and thirty-seven cents in money, the personal property of the said lodge, to the possession of which the said lodge was then and there entitled, did then and there unlawfully, fraudulently, and feloniously embezzle, purloin, secrete, and appropriate to his own use said personal property, without then and there having the consent of the lodge so to do,"

etc., such indictment is sufficient on motion in arrest of judgment, the failure to describe with more particularity the corporation or association designated in the indictment as "Hoosier Lodge, No. 261, Brotherhood of Railroad Trainmen," being a defect cured by the verdict.

SAME.—*Embezzlement.*—*Association.*—*Indictment, Sufficiency of.*—In such indictment, "Hoosier Lodge, No. 261, Brotherhood of Railroad Trainmen," was an *association* within the meaning of the statute, and it was sufficient to charge the money, alleged to have been embezzled, as the property of such association, without setting forth *seriatim* the names of the members of the association.

SAME.—*Embezzlement.*—*Association.*—*Defendant an Officer and Member of.*—The defendant named in the indictment held the official position of "financier" of such lodge or association, was an employe of the association, within the meaning of the statute, and the funds in his hands, as such officer, were the subject of embezzlement by him, notwithstanding the fact that the defendant was a member of the association, and had an equal interest therein with the other members.

From the Marion Criminal Court.

*J. J. Rochford, J. T. Reardon* and *J. Collier,* for appellant.

*A. G. Smith,* Attorney-General, *J. W. Holtzman,* Prosecuting Attorney, and *F. T. Edenharter,* for State.

DAILEY, J.—James H. Laycock, the appellant in this case, was the defendant in the criminal court of Marion county, charged with embezzling from "Hoosier Lodge, No. 261, Brotherhood of Railroad Trainmen," the sum of two hundred and eighty-nine dollars and thirty cents in money, the property of said lodge, etc.

In the second count of the indictment, it is charged that the money alleged to have been embezzled belonged to one James F. Lee, but there is no claim made whatever on the second count of the indictment, and it is not before us for our consideration.

The first count of the indictment, omitting the caption, reads as follows:

"The grand jurors for the county of Marion and State

of Indiana, upon their oaths, present that James H. Lay-
cock, on the first day of December, A. D. 1892, in the
county of Marion and State of Indiana, being then and
there the officer, agent, clerk, servant and employe of
Hoosier Lodge, No. 261, Brotherhood of Railroad Train-
men, and having then and there, as such officer, agent,
clerk, servant and employe, the control and possession
of two hundred and eighty-nine dollars and thirty-seven
cents in money, the personal property of the said lodge,
to the possession of which the said lodge was then and
there entitled, did then and there unlawfully, fraudu-
lently, and feloniously embezzle, purloin, secrete, and ap-
propriate to his own use said personal property, without
then and there having the consent of the lodge so to do.
Contrary to the form of the statute in such case made
and provided, and against the peace and dignity of the
State of Indiana.''

This indictment is signed by John W. Holtzman,
prosecuting attorney, and indorsed by the foreman as
''a true bill.'

It is predicated upon section 1944 of the Revised Stat-
utes of the State of Indiana, of 1881, which reads as fol-
lows:

''Every officer, agent, attorney, clerk, servant, or em-
ploye of any person, or persons, or corporation or asso-
ciation, who, having access to, control, or possession of
any money, article or thing of value, to the possession
of which his or her employer or employers is or are en-
titled, shall, while in such employment, take, purloin,
secrete, or in any way whatever appropriate to his or
her own use, or to the use of others, or knowingly per-
mit any other person to take, purloin, secrete, or in any
way appropriate to his or her own use, or to the use of
others, any money, coin, bills, notes, credits, choses in
action, or other property or article of value belonging to

or deposited with, or held by such person or persons, or corporation or association, in whose employment said officer, agent, attorney, clerk, servant, or employe may be, shall be deemed guilty of embezzlement, and, upon conviction thereof, shall be imprisoned in the State prison for not more than fourteen years nor less than two years, fined in any sum not more than one thousand dollars nor less than one dollar, and disfranchised and rendered incapable of holding any office of trust or profit for any determinate period."

The record discloses that on February 27th, 1893, the defendant was arraigned upon the indictment, and entered a plea of not guilty; that on April 20th, 1893, the defendant moved to quash the indictment, which was at the time overruled by the court, and the issue thus joined was submitted to a jury for trial.

On the 21st day of April, 1893, the jury returned into court their verdict in this cause as follows:

"STATE OF INDIANA
v.                    } No. 23,162.
JAMES H. LAYCOCK.

"Criminal Court Verdict.

"We, the jury, find the defendant guilty of embezzlement, as charged in the indictment, and that he be fined in the sum of one dollar and be imprisoned in the State prison for a period of two years and be disfranchised and rendered incapable of holding any office of trust or profit for a term of two (2) years.

"HENRY GIMBER, Foreman."

On April 28, 1893, the appellant moved for a new trial in said cause for the following reasons, to wit:

*First.* Because the court erred in overruling defendant's motion to quash the indictment.

*Second.* Because the verdict of the jury is not sustained by the evidence.

*Third.* Because the verdict of the jury is contrary to law.

*Fourth.* Because the court erred in giving to the jury the following instructions, numbered 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10, severally and each of them, which instructions are made part of this motion.

On April 29, 1893, the court overruled the motion, to which ruling the defendant, at the time, excepted. The defendant then moved in arrest of judgment, but the court overruled said motion, to which the defendant excepted, and sixty days were given to present a bill of exceptions. The court thereupon rendered judgment upon the verdict; from which the defendant prosecutes this appeal.

On May 29, 1893, the defendant presented his bill of exceptions, embodying the stenographer's official report of the trial of the cause, which has been properly signed and made a part of the record.

The appellant assigns as errors.

1. The court erred in overruling the defendant's motion to quash the indictment.

2. The court erred in overruling the defendant's motion for a new trial.

3. The court erred in overruling the defendant's motion in arrest of judgment in said cause.

This assignment of error is, in effect, the complaint in the appellate tribunal, and invokes the exercise of its power.

The first specification presents no question for review by us, involving the rulings of the trial court in the matter of which complaint is made.

"In a just sense, the assignment does not and can not in any case controvert the record, inasmuch as it assumes the verity of the record, and implies that error is apparent thereon." Elliott's App. Proced., section 301.

Laycock *v.* The State.

It appears from the record, that the arraignment antedated the motion to quash twenty-one days, and no leave was either asked by or granted the appellant to withdraw his plea of not guilty to the indictment. Leave might have been asked, but in the absence of a showing of a proper cause, the granting or withholding leave to withdraw his plea rested entirely within the discretion of the criminal court. *Epps* v. *State*, 102 Ind. 539.

By section 1762, R. S. 1881, it is enacted that "If the motion to quash be overruled, the defendant shall be arraigned by the reading of the indictment or information to him by the clerk, unless he waive the reading; and he shall then be required to plead immediately thereto," unless further time be given to answer.

This court, in *Epps* v. *State, supra,* said: "This section makes it plain that a motion to quash, as well as a demurrer to an indictment, in regular order, precedes the arraignment."

It was, however, intimated by this court, in *West* v. *State,* 48 Ind. 483 (484), that perhaps "the court might, in its discretion, have entertained the motion without the withdrawal of the plea."

But there is one question remaining which is fatal to appellant's first assignment of error. It is a well recognized rule of law that a motion to quash an indictment for insufficiency having been overruled by the court and an exception taken to the ruling, the question is directly presented whether the indictment is legally sufficient to sustain a conviction. In the case at bar, no exception seems to have been reserved to the action of the trial court, in overruling the motion to quash the indictment, and inasmuch as the record fails to show that the appellant excepted to the ruling of the court in disposing of the motion to quash, the question of the sufficiency of the indictment does not arise on the record; and hence

whatever the facts may be with respect to its alleged insufficiency, we are not permitted to consider it. Of course, a bill of exceptions is not necessary to present to the Supreme Court an exception to the ruling on a motion to quash an indictment. *State* v. *Judy*, 60 Ind. 138; *State* v. *Day*, 52 Ind. 483; *State* v. *Vanderbilt*, 116 Ind. 11; Gillett Crim. Law, section 1004.

But it is essential that there should be an exception taken at the time the ruling is made.

The third assignment of error is upon overruling the motion in arrest of judgment. This, it seems, was based upon the alleged insufficiency of the indictment, in failing to aver that "Hoosier Lodge, No. 261, Brotherhood of Railroad Trainmen," was organized under the laws of the State of Indiana, or organized under the laws of any other State of the Union, so that upon the face of the indictment it might be determined whether or not the complainant had any legal existence.

Conceding the indictment to have been bad on a motion to quash, we think the question of its want of sufficiency was not reached by the motion in arrest, as that did not constitute one of the two causes for which only the judgment may be so arrested.

The two causes are:

1. The grand jury who found the indictment had no legal authority to inquire into the offense charged, by reason of it not being within the jurisdiction of the court.

2. That the facts stated do not constitute a public offense.

Under the last cause, as we understand it, when the prosecution is founded upon an indictment, the judgment may be arrested for want of material jurisdictional averment in the indictment. It has repeatedly been decided that where an indictment or information does not

contain all the essential elements of a public offense, a motion in arrest of judgment will be sustained. *Greenley* v. *State*, 60 Ind. 141; *Lowe* v. *State*, 46 Ind. 305; *Shepherd* v. *State*, 64 Ind. 43; *Hoover* v. *State*, 110 Ind. 349.

In our opinion, the failure to describe with more particularity the corporation or association designated in the indictment as "Hoosier Lodge, No. 261, Brotherhood of Railroad Trainmen," was a defect cured by the verdict, because the name of the injured party is stated, the fault being in a failure to designate it either as a corporation or an association. The argument is that the lodge had no legal existence at the time; and if the defendant, in the court below, was guilty of embezzling from a number of persons, the indictment, to be sufficient to charge the crime of such fraudulent appropriation, on its face, should set out the names of the parties injured thereby. There are many defects in pleading, both in civil and criminal cases, which would be fatal on demurrer or on motion to quash, which are not available on a motion in arrest of judgment. *Graeter* v. *State*, 105 Ind. 271; *Trout* v. *State*, 107 Ind. 578; *Greenley* v. *State, supra; Lowe* v. *State, supra; Shepherd* v. *State, supra; McCool* v. *State*, 23 Ind. 127; *State* v. *Noland*, 29 Ind. 212; Gillett Crim. Law, 562; Bicknell Crim. Prac., 310; *State* v. *Murphy*, 8 Blackf. 498; *Peters* v. *Banta*, 120 Ind. 416; *Colchen* v. *Ninde*, 120 Ind. 88; *Hare* v. *State*, 4 Ind. 241; *Nichols* v. *State*, 127 Ind. 406.

Section 1891, R. S. 1881, provides that "In the consideration of the questions which are presented upon an appeal, the Supreme Court shall not regard technical errors or defects or exceptions to any decision or action of the court below, which did not, in the opinion of the Supreme Court, prejudice the substantial rights of the defendant."

With this statute in view, the rule in this State is that where the indictment contains all the essential elements of a public offense, even though imperfectly stated, it will be held sufficient to withstand a motion in arrest of judgment.   *Trout* v. *State, supra; Graeter* v. *State, supra; Nichols* v. *State, supra.*

We think the indictment in this case contains all the essential elements of a charge of embezzlement, but it is defective by reason of the uncertainty and imperfection in the matter indicated by us.   Such imperfection, however, will not warrant the court in arresting the judgment on motion, because it could not possibly tend to the prejudice of the substantial rights of the appellant upon the merits; surely it can not be claimed that the rights of the appellant upon the merits can be prejudiced by the question as to whether the complainant was a corporation or an association of individuals, and it can not be successfully assumed that the acts imputed to the appellant as charged did not constitute a public offense. The law of embezzlement is purely statutory, and originated in an attempt to amend the common law of larceny, and is a sort of statutory larceny.   2 Bishop's New Crim. Law, Specific Offenses, section 318.

Section 1944, *supra,* on which this prosecution is based, clearly contemplates that funds may be embezzled from some aggregate body other than a corporation. The language is "corporation or association."   If "Hoosier Lodge," etc., was an association within the meaning of the statute, it is probably sufficient to allege the ownership of the money in the association by its name.   The same rule applies to a corporation.

"Goods belonging to a corporation must be laid as the property of the corporation by its corporate name, and not as the property of the individual corporators, though

they be all named." Wharton's Am. Crim. Law (4th and rev. ed.), vol. 2, section 1828.

In section 1835 of this work, the author says: "Where the thing stolen is alleged to be the property of a corporate body by name, it is not necessary to aver the political existence of the corporation. Its existence *is a matter* of evidence, and after verdict, it is inferred from *its* corporate name."

It is doubtless true that "where men associate themselves together, and conduct a general business under a common name, and do not incorporate the association under the laws of this State, they may be deemed partners." *Love* v. *Blair*, 72 Ind. 281.

But this rule applies to trading or other purely business concerns carried on for pecuniary profit. In the case last quoted from, the association deemed a partnership was the "Limited Liability Coal Company," not incorporated.

In *Kenyon* v. *Williams*, 19 Ind. 44, it was a mercantile body doing business as the "Farmers' Union Store." And in *Manning* v. *Gasharie*, 27 Ind. 399, it was the same kind of concern. And so in *Wallace* v. *People*, 63 Ill. 451, where the crime was larceny, the property was alleged to be the property of the "American Merchants' Union Express Company," and it not appearing that it was a corporation, the court held the ownership should have been laid in the names of the individuals composing it. This is but the general rule in larceny, that "where there has been no act of incorporation, the trustees or joint owners must be named *seriatim*." This rule is intended to apply to concerns of the character above mentioned, and not to the "associations" or unincorporated aggregate bodies contemplated by statute.

In 6 Am. and Eng. Encyc. of Law, 498a, it is said: "The officers of a friendly society, or other voluntary as-

sociation, may be indicted for embezzlement as a servant in case the fraudulent conversion of moneys belonging to the society, and which came into his hands as such officer and by reason of his employment and duties as such officer.''

In *Commonwealth* v. *Leisenring*, 11 Phila. 389, the indictment laid the ownership of the money in the ''Passenger Conductors' Life Insurance Company of the United States.''

Even, however, if appellant's argument is correct, that ''Hoosier Lodge,'' etc., is to be deemed a partnership because it is not shown in the indictment to be a corporation, the charge would, under our statute, be sufficient as against any one not a partner.

Section 1753, R. S. 1881, provides: ''When any offense is committed upon or in relation to any property belonging to partners or to several joint owners, or which, when the offense was committed was in possession of a bailee or tenant, the indictment or information for such offense shall be deemed sufficient, if it allege the ownership of such property to be in such partnership by its firm name,'' etc.

But in considering the motion in arrest of judgment, if the complainant be considered a partnership and appellant to have been a partner in it when he committed the crime charged, the motion in arrest should have been sustained under the second and third specifications of section 1759, R. S. 1881, as our statute is not broad enough to sustain the charge of embezzling partnership property against a partner, for they sustain the relation of principals as well as agents. But the indictment is not defective in any of the respects mentioned in said section. It charges the ''officer,'' etc., of an association named with embezzling the property of the association,

and in this respect it is in strict compliance with the statute.   Section 1944, *supra.*

The word "lodge" is defined by Webster, in his Unabridged Dictionary, as "the meeting room of an association; hence, the regularly constituted body of members which meets there," etc.

An "association" is "an organization of persons without a charter, for business, humanity, charity, culture or other purpose; any unincorporated society or body." Anderson's Law Dic., title "Association," 2.

"The organization of societies and clubs, unlike that of corporations, does not depend upon statutory provisions; but as to manner and effect, is within the discretion of the associators."   22 Am. and Eng. Encyc. of Law, 805.

They are neither partnerships nor *quasi* partnerships. *Ib.* 804 and 805 and notes.

In *Lafond* v. *Deems*, 81 N. Y. 507, the court said: "Associations of this description are not usually partnerships.   There is no power to compel the payment of dues, and the right of the member ceases when he fails to meet his annual subscriptions.   This certainly is not a partnership, and the rights of copartners as such are not recognized.   The purpose is not business, trade or profit, but the benefit and protection of its members, as provided for in its constitution and by-laws.   In accordance with well established rules, no partnership exists under such circumstances."

In the case under consideration, a copy of the constitution and general rules of the "Brotherhood of Railroad Trainmen," including the constitution of the subordinate lodges, is in evidence.   The objects of the order are expressed in the preamble as follows:   "To unite the railroad trainmen; to promote their general welfare and advance their interests, social, moral and intellectual; to

protect their families by the exercise of a systematic benevolence, very needful in a calling so hazardous as ours, this fraternity has been organized.''

It possesses benefit features. It was a subordinate lodge and was not incorporated.

The rights, duties, and privileges of members of subordinate lodges are set forth in the constitution, section 140:

''The funds and property of this lodge having been raised for the relief of sick and distressed brothers, and other charitable purposes in the Brotherhood, are trust funds for the contingent benefit of its members, and shall not be divided or loaned in any manner among or to the members individually, nor between the lodges, nor any other that may branch from it without the assent of a majority of the members in good standing upon the rolls. Whenever a brother ceases to be a member of this lodge, his right, title and interest in and to the property of this lodge, or any part thereof, becomes extinguished.''

The official position held by the appellant at the time of the embezzlement, to wit, December 1st, 1892, was that of ''financier,'' to which he succeeded September 1st, 1892, and served as such until the time of his expulsion, sometime after December 6th, 1892.

The duties of the ''financier'' are provided for by section 114 as follows:

''It shall be the duty of the financier of this lodge to receive all money, giving his receipt for the same (except in offices having the office of collector, where all moneys shall be received as hereinafter provided). He shall also report to the grand secretary and treasurer the admission of candidates, forwarding their grand dues, as provided in the constitution. With the name of the member, he shall forward the date of admission, his residence and age, also the name and residence of the person

to whom his benefit policy is to be made payable. On receipt of such benefit policies, he shall, in conjunction with the secretary, sign and deliver them to their respective holders, seeing that their signatures are attached thereto. Every three months he shall prepare and submit a report, giving a statement of the financial condition of the lodge, such report to be submitted to the board of finance, together with the cash on hand or its equivalent, and, if found correct, to be indorsed by their signatures and forwarded to the grand master. A duplicate of the same shall be kept on file in the lodge. When receipts for dues of a deceased or disabled brother can not be found, the financier shall issue duplicates of the same. Each duplicate receipt must bear the exact date on which payment was made, and all such duplicate receipts must have the word 'duplicate' plainly written across the face. A financier failing to forward the grand dues and assessments of members, as required by law, shall, upon conviction thereof, be expelled; the financier shall hold and keep secure all the funds of the lodge, paying no bills, except upon an order signed by the master and secretary of the lodge. He shall also give bonds, if required by the lodge, for the faithful performance of his duties. The financier shall also be required to sign all papers requiring his official signature, and perform such other duties as are required of him by this constitution."

Appellant was compensated for his services. This brings us to the consideration of instructions 4, 5, and 6, assailed by the appellant as erroneous.

In construing the indictment, the court below evidently held that "Hoosier Lodge," etc., was an association within the statute. By the record, as stated, it is shown that the appellant was a member and an officer, viz., the

financier of "Hoosier Lodge," etc., at the time of the alleged embezzlement.

Instruction number 4 reads as follows: "If you find that the defendant was the financier or treasurer of Hoosier Lodge, No. 261, Brotherhood of Railroad Trainmen, and was receiving a compensation from the association, for services rendered by him as such financier or treasurer, then you will be justified in finding that such association was his employer within the meaning of the statute."

Instruction number 5 is as follows: "If you find that Hoosier Lodge, No. 261, Brotherhood of Railroad Trainmen, was an organized association of persons for a benevolent purpose, and that each member of such association was required to pay into the treasury a certain sum monthly as dues, and that by the by-laws of such association all money so paid in went into the common fund, to be used only for the purpose of the lodge, and to be drawn upon as might be ordered by the lodge according to its rules, and that the individual interests of the members of such association in the fund was contingent only thereunder, then you will be justified in determining that such fund may be the subject of embezzlement by an officer or employe of such association, even though such officer or employe is a member of such association, and as such paid dues which constituted a part of such fund.

The sixth instruction is in this language: "So if, in this case, you should find that the defendant, Laycock, was the financier or treasurer in the employ of Hoosier Lodge, No. 261, Brotherhood of Railroad Trainmen, an organized association of persons for benevolent purposes, and that as such he had access to, control or possession of, money belonging to such association and to which it was entitled, and that while in such employment he

knowingly, wrongfully, and fraudulently appropriated to his own use the money so in his possession belonging to such association, as charged in the indictment, and know-ing at the time that he had no right to so appropriate said money, and appropriated it without the consent of such association, and intending thereby to deprive the association thereof, you will be justified in finding the defendant guilty of embezzlement, as charged in the in-dictment, and in fixing his punishment as you see fit within the limits of the statute.''

Counsel argue, that instruction number 4 is not the law, for the reason that the appellant was as much inter-ested in the lodge as any member therein, and in order to constitute embezzlement it would be necessary to take the money from some one who, under the law, was en-titled to the possession thereof; that appellant, being a member of the lodge, was entitled to it, and that he was not the servant of any legal body, person, or corporation, within the meaning of the statute, but according to the instructions of the court, was the servant of, and em-bezzled from, himself.

Like objections are made to instructions numbered 5 and 6. The fund in question was set apart and devoted to charitable and benevolent purposes. The appellant was made the trusted agent of the association, charged with the duty of preserving its funds for the use of needy and distressed brothers of the order, and an answer by him to a charge of fraudulent conversion, that he had an equal interest with others therein, and no one had a right to complain because there was no principal entitled to its recovery, does not find support under existing stat-utes. This money having been dedicated to the wants of the sick and helpless, the trustee had no right to pro-fane or violate a sacred trust in the manner charged, and for such act he is answerable. The act of embezzlement

may be perpetrated as well against the property of an association as of a corporation.

On the evidence in the record, in our opinion, the court did not err in instructing the jury that "Hoosier Lodge" was appellant's employer within the meaning of the statute, and that the funds in the "financier's" hands were the subject of embezzlement by him, from said lodge as an organized association for benevolent purposes.

We think the judgment should be, and it is, affirmed.

Filed Jan. 9, 1894.